Kenny GARNER *v.* STATE of Arkansas

CR 75-30                     524 S.W. 2d 223

Opinion delivered June 23, 1975

*McDaniel & McDaniel*, for appellant.

*Jim Guy Tucker*, Atty. Gen., by: *Gary Isbell*, Asst. Atty. Gen., for appellee.

LYLE BROWN, Justice. Appellant Kenny Garner was charged with two counts of selling marihuana and the counts were consolidated for trial. Undercover agents Jackson and Hill testified appellant, along with co-defendant Diane Garner, sold them each a "lid" of marihuana for $15 each on

June 11, 1974. The undisputed evidence showed that Officer Walker met the undercover agents and received the contraband and, along with Officer Silvey, delivered the substance to Mr. Wise of the State Health Department laboratory for analysis. Mr. Wise testified the substance contained "marihuana, C.S.L." There was no testimony on behalf of either appellant or his co-defendant.

Appellant advances three points for reversal and additional facts will be supplied when those facts are necessary to a determination of the issue in question.

Appellant contends that since Officer Silvey was unable to identify the State's Exhibits One and Two by his initials, the State failed to establish a proper chain of custody of the evidence. The point has no merit. Even without Officer Silvey's testimony, there is testimony showing each transfer of the evidence from the time it was purchased from appellant until it was introduced in the evidence. The envelopes were clearly marked with unique numbers which matched the numbers on the receipts from the State laboratory. Very much in point is the case of *Fight* v. *State*, 254 Ark. 927, 497 S.W. 2d 262 (1973). There the appellant alleged the proper chain of custody had not been established because one of the officers who had handled the evidence did not testify. We said: "We do not agree. Both Officer Hartman and Detective Reather again took the stand and testified that the Fight envelope bore the markings placed by them, and Mrs. Van Dusen stated that it was sealed when delivered to her; she opened the envelope on the end and it was still sealed at the flap at the time of the trial. The record does not reflect why Sergeant Langston did not testify but we think under the circumstances herein, that the evidence was admissible. According to the testimony of the officers, the envelope, clearly identifiable since they had placed notations upon it, was the same in which the tablet containing LSD had been placed, and Mrs. Van Dusen likewise identified this envelope as being the one from which the tablet was taken. The purpose of the chain of identification is to prevent the introduction of evidence which is not authentic. The fact that the envelope was delivered to Mrs. Van Dusen by the Health Department official in charge of the mail is not really argued, only men-

tioned, and certainly there is no suggestion that either this official or Sergeant Langston had tampered with the envelope."

The appellant next contends that because the State failed to show that the substance introduced in evidence as "Marihuana, Cannabus sativa L." did not fall within the exemption provision of Ark. Stat. Ann. § 82-2601(n) (Supp. 1973) the State failed to prove the appellant sold a controlled substance. The contention is without merit. Ark. Stat. Ann. § 82-2601(n) (Supp. 1973) reads:

" 'Marihuana' means all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of the plant; and every compound, manufacture, salt, derivative, mixture, or preparation of the plant, its seeds or resin. It does not include the mature stalks of the plant, fiber produced from the stalks, oil or cake made from the seeds of the plant, any other compound, manufacture, salt, derivative, mixture, or preparation of the mature stalks (except the resin extracted therefrom), fiber, oil, or cake, or the sterilized seed of the plant which is incapable of germination."

Appellant's contention is answered by statute, Ark. Stat. Ann. § 82-2630 (Supp. 1973). It reads:

"(a) It is not necessary for the State to negate any exemption or exception in this Act [§§ 82-2601—82-2638] in any complaint, information, indictment or other pleading or in any trial, hearing, or other proceeding under this Act. The burden of proof of any exemption or exception is upon the person claiming it."

The final point, and one which requires reversal of the case, concerns an extended colloquy between the court and counsel over the testimony of Larry Jackson and Paula Bailey. A thorough understanding of the point requires that we quote at length the described colloquy. A witness for the State, Larry Jackson, was cross-examined without objection as follows:

"Q. I am going to ask you some rather relatively specific questions. Did you, in late July, 1974, at Crawford's Trailer Park where James Burdette lived, sell two joints of marijuana to Paula Bailey for the sum of $1.00?

A. No, sir.

Q. You deny that?

A. Yes, sir."

The State called one Paula Bailey in its case-in-chief and counsel for appellant objected on the basis that the name of the witness was not on the information and was not furnished pursuant to a motion to produce names of witnesses which previously had been granted. The appellant further objected as to the relevancy of the expected testimony if the testimony to be elicited was to prove that Larry Jackson had not sold Paula Bailey two joints of marijuana.

The Court allowed the witness to testify and the record reflects:

"Q. Has Larry Jackson ever sold two joints of marijuana to you?

A. No, sir.

Q. All right, nothing further.

BY MR. McDANIEL: Your Honor, again we object. That is totally irrelevant testimony of this witness. We move that it be stricken and the jury (told) to disregard it.

. . .

BY MR. PEARSON: If the Court please, upon the cross-examination of Mr. Jackson, by Mr. McDaniel, Larry Jackson was asked on cross-examination if it was not true that he sold two joints of marijuana to one Paula Bailey and this is pertinent to show the good faith

of the cross-examination and that there is no basis for any impeachment of this witness.

BY THE COURT: The objection will be *overruled*.

BY MR. McDANIEL: May I further object on the basis that though we asked a question of Mr. Jackson we were bound by his answer and could not bring in contradictory proof regardless what his answer would have been. We were bound by his answer.

BY THE COURT: The objection will be overruled. You inquire.

CROSS-EXAMINATION BY MR. McDANIEL:

BY MR. McDANIEL: Your Honor, might the record reflect that though we are examining, we have no intention of waiving our objection and ask that it be a continuing for all the testimony of this witness.

BY THE COURT: You want to object to the testimony you elicit from the witness?

BY MR. McDANIEL: No, Your Honor, I want the record to reflect that we object to this witness being allowed to testify in any respect in this trial.

BY THE COURT: I don't see how you can object to the testimony that you are going to elicit from the witness, yourself.

BY MR. McDANIEL: Your Honor, I am objecting to the relevancy of it. Since this Court has allowed this witness to testify on direct examination, I am asking for the opportunity to cross-examine this witness without having, this Court having considered our original objection made.

BY THE COURT: All right, the objection will be *sustained* then, the testimony of this witness stricken from the record. The jury told to disregard it. You may stand aside.

BY MR. McDANIEL: At this time we move for a mistrial.

BY THE COURT: Be denied. I thought you said you wanted the jury admonished.

BY MR. McDANIEL: I do want the jury admonished. *I do not think the admonishment is enough and I ask for a mistrial.*

BY THE COURT: Well, that is not what you said.

BY MR. McDANIEL: I am asking for it now, if Your Honor please.

BY THE COURT: Well, you just go ahead and examine the witness then. You need to make up your mind what you want.

BY MR. McDANIEL: *Your Honor, I would like to have a mistrial.*

BY MR. PEARSON: *The evidence does stay in I take it.*

BY THE COURT: *Yes sir.* All of the last portion of the Court's ruling be stricken from the record. You may examine now, if you have any desire to do so.

BY MR. McDANIEL: Your Honor, I would like for the Court's ruling to remain in the record.

BY THE COURT: No, they have been stricken from the record because we are proceeding with the testimony of the witness.

BY MR. McDANIEL: Do I understand that the Court is not going to leave his ruling in the record. The record will not reflect the proceedings —

BY THE COURT: No, I am just withdrawing them because of your desire, Mr. McDaniel, to examine the witness, I am going to let you do it.

BY MR. McDANIEL: No, Your Honor, I don't desire to examine this witness except for the fact that the Court has allowed her to testify on direct examination.

BY THE COURT: I'm not going to argue with you about the ruling. I have made the ruling. Now, you can abide by it or ask any question you want or have a seat. Any way you want to handle that.

BY MR. McDANIEL: Note our exceptions. (Emphasis added)."

In the first place the testimony of Paula Bailey was inadmissible. Whether Jackson sold marihuana to Paula Bailey was a collateral matter and Jackson's testimony thereon should have ended the matter. Nevertheless, in the absence of the extended argument just reproduced we might hold the admission of the testimony to have been harmless error. However, the recounted colloquy places undue emphasis on the inadmissible testimony. The inconsistent rulings of the court and the chastisement of defense counsel, we fear, overly impressed the jury with Paula's testimony. At least we cannot say it was harmless error; in such event it becomes our duty to say it was prejudicial.

Reversed and remanded.

JONES, J., dissenting.

J. FRED JONES, Justice, dissenting. I respectfully dissent from the majority opinion in this case. I agree that the extended colloquy concerning the admissibility of Paula Bailey's testimony may have overly impressed the jury with its importance; but, I base my dissent on the unusual premise of what I perceive a rule of evidence should be in this state, rather than a disagreement with the majority as to what the rule is as established by precedent.

As I perceive the primary object of any criminal trial, it is to get at the truth of the matter as to guilt or innocence of the accused in a fair and impartial manner without prejudice to the accused or prejudice to the state. Of couse, under the

established rules of evidence, a defendant, or a witness for the prosecution, may be cross-examined on collateral matters under the theory of testing his credibility. It is quite true that the side doing the questioning is bound by the answer given, but the facts of the binding force are only cognizable on appeal.

It is my opinion that the attorneys in a criminal trial should either be restricted in cross-examination under the guise of testing the credibility of a defendant or witness, especially in the area of questions pertaining to specific criminal acts involving specific individuals at a specific time and place, or else they should take the chance of having the answer corroborated by the testimony of the other person involved in the question.

In far too many instances, on the theory of testing the credibility of a defendant or witness, the prosecuting attorney or defense counsel will glance at what appears to be a "rap sheet" or some other record and then ask such question as was asked the witness in the case at bar: "Did you, in late July, 1974, at Crawford's Trailer Park where James Burdette lived, sell two joints of marijuana to Paula Bailey for the sum of $1.00?" The attorney, in asking a question like this, is not restricted to the one incident but in "testing the credibility" of the defendant or witness, may go on and on until the trial court calls a halt to such questioning.

As already stated, the jury is concerned with the facts of the case and is not concerned with the rules of evidence. It is my opinion that such procedure, without further proof than the bare "yes" or "no" answer, is bound to destroy, or at least reflect on, the credibility of the testimony in the eyes of the jury, rather than *test* the credibility for the benefit and purpose of the attorneys at the trial.

This is an area in the rules of evidence that I feel should have the attention of the bench and bar, and that is the primary reason for my dissent in this case. The trial court is in a position to determine what questions are asked in good faith in testing the credibility of a witness and, while I am of the opinion such determination should be made by the trial

judge at a conference in chambers rather than in the presence of the jury, I would affirm the judgment in this case.